HARTSELL v. McDOWELL.

4-9154                                         228 S. W. 2d 614

Opinion delivered April 10, 1950.

*Surrey E. Gilliam,* for appellant.

*Wade Kitchens* and *W. H. Kitchens, Jr.,* for appellee.

GEORGE ROSE SMITH, J.   This is a bill in equity filed by the appellant to obtain from the appellees, J. H. McDowell and W. O. Dailey, an accounting for the wrongful sale of partnership timber and damages for profits that would have accrued had the timber not been sold.   After hearing the testimony the chancellor dismissed the complaint for want of equity.

In the early part of 1948 McDowell was in business as a timber cutter, employing several crews of laborers. The Haynesville Planing Mill Company liked the quality of his work and engaged him to cut and bank three million feet of timber.   As McDowell had no funds with which to buy tracts of timber the Planing Company agreed to advance the purchase money, taking a deposit of the timber deeds as security.   The appellant and Dailey joined McDowell in the venture, and the three began buying timber in McDowell's name with money furnished by the Planing Company. On January 29, 1948, the three men executed a written agreement which recited that the Planing Company had advanced $7,750 for timber deeded to McDowell.   It was further stated that McDowell and Dailey would cut and bank the timber, for which the Planing Company had agreed to pay them $15

a thousand feet and to credit an additional $15 a thousand feet on the $7,750 debt. "After the Haynesville Planing Mill has received its $7,750 . . . [McDowell and Dailey] will still receive $15.00 per thousand for their cutting and banking the said timber, and out of the other $15.00 per thousand they will pay to [Hartsell] 1/3 of the net profit as to the balance of said timber." By its terms the contract does not impose any duties upon Hartsell, who testified that his contribution consisted in arranging for the purchase of various tracts of timber.

The venture lasted for less than two months. On March 27 the appellees released to the Planing Company all interest in the timber deeds and accepted $2,000 in settlement of their claims against the Company. The appellant contends that this action deprived him of a substantial profit which could have been made by selling the timber to another lumber company and that in any event he is entitled to a third of the $2,000 payment, which the appellees divided between themselves.

There is a direct conflict in the testimony about the events leading to the termination of the venture. It is admitted that the appellant was not on good terms with the Planing Company, and it may fairly be inferred that the Company would not have engaged McDowell had it known that appellant was to participate. Both the appellees testified that the appellant insisted on selling the timber "out from under" the Planing Company in order to make an immediate profit. When the Company learned of this conduct it demanded that McDowell release the title to the timber and that Dailey surrender his teams and logging equipment, for which the Planing Company had advanced the purchase money. Dailey, who is appellant's brother-in-law, states that he and McDowell informed appellant of the Planing Company's demands, but the appellant was intoxicated and the only answer they could get was, "God damn it, I am going to give [the Planing Company] $7,500 and I am going to get $12,000 for the timber." In this predicament, with the Planing Company insisting upon immediate action, the appellees made the best settlement they could. They both

testified that they took a loss on the transaction. They owed labor bills and feed bills and had not yet been paid for their work on two tracts. The sum they received was not enough to pay their actual expenses for the work done. They say that the appellant alone made a profit, as some timber tracts had been bought by the partners at a price lower than the amount charged to the Planing Company, and the difference was divided equally.

We think the chancellor's action is supported by the preponderance of the testimony. We realize that a fiduciary relationship exists among partners or joint adventurers, but the appellant was not himself free from its obligations. It was his duty to coöperate to the fullest extent in promoting the common interest of the partners. The evidence justifies a finding that the appellant was the first to disregard his fiduciary duty and that his repeated efforts to sell out for a quick profit were directly responsible for the collapse of the undertaking.

Furthermore, the contract that we have quoted provides that after the Planing Company had been repaid the appellees will receive $15 a thousand feet for cutting and banking the timber, and out of the other $15 a thousand they will pay the appellant a third of "the net profit." The appellant testified that the parties were to divide the second $15 equally, but the appellees say they understood that the appellant was not to receive anything unless there was a profit. Whether or not we consider this parol evidence as being admissible, it is evident that the contract's reference to a net profit confirms the appellees' belief that if their activities involved expenses of more than $15 a thousand feet those expenses were to be repaid before a distribution of profits was made. We conclude that both the evidence and the equities support the view that, largely as a result of the appellant's conduct, the venture resulted in a loss rather than in a profit to the appellees.

Affirmed.